UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose A. GARCIA, Defendant–Appellant.

No. 94–5216.

United States Court of Appeals,
Tenth Circuit.

Feb. 22, 1996.

Vicki Mandell–King, Assistant Federal Public Defender, Denver, CO (Michael Gordon Katz, Federal Public Defender, with her on the briefs) for Defendant/Appellant.

Catherine Depew Hart, Assistant United States Attorney, of Tulsa, OK (Stephen C. Lewis, United States Attorney and Neal Kirkpatrick, Assistant United States Attorney, of Tulsa, OK, with her on the brief) for Plaintiff/Appellee.

Before EBEL, HOLLOWAY, and KELLY, Circuit Judges.

EBEL, Circuit Judge.

As stated by the government, this case involves "one of the few times that [the judicial process] sort of breaks down into a non-

adversarial system." After pleading guilty to distribution of cocaine, the district court sentenced Defendant Jose A. Garcia to 72 months imprisonment over the objections of both Defendant's attorney and the prosecuting attorney, who together sought a lower sentence. Defendant now appeals his sentence, arguing that: (1) the court violated separation of powers principles by enhancing his sentence over the government's objections; and (2) the court committed various procedural errors during sentencing that require resentencing. For the reasons stated below, we AFFIRM on all grounds.

## Background

A grand jury indicted Defendant on June 8, 1994, with conspiracy to distribute cocaine and marijuana ("Count 1") and the substantive offense of distribution of cocaine ("Count 5"). Defendant and the government entered into a plea agreement providing that the United States would dismiss Count 1 in exchange for Defendant's pleading guilty to Count 5. The agreement provided that the sentence to be imposed:

*will remain in the total discretion of the trial court judge,* within the requirements of the United States Sentencing Commission guidelines in effect at the date of the plea. This letter makes no representation as to what range of punishment the guidelines provide for the offenses or what the defendant's final numerical level under the guidelines will be.

Pursuant to this agreement, on Count Five Mr. Garcia faces a maximum of twenty (20) years imprisonment, up to a One Million Dollar fine, at least three (3) years supervised release and a $50.00 special assessment.

(I R.O.A. Doc. 71) (emphasis in original).

During the plea inquiry and under oath, Defendant admitted that he delivered 1½ ounces of cocaine to Doug McGowan, a convicted drug offender operating as a govern-

ment informant at the time. The government stated that for purposes of determining the quantity of drugs for the base offense level under U.S.S.G. § 1B1.3, relevant conduct would include another similar controlled buy and cocaine amounts involved in two other cases pending in district court. The parties agreed that the quantity of drugs on which the base offense level should be calculated would be approximately 100 grams and would not exceed 500 grams, which was the next break point in the Guidelines for calculating the statutory sentencing range. The district court advised Defendant that the maximum penalty which could be imposed for such an amount of drugs was imprisonment of twenty years and a fine of $1 million. The court also told Defendant that it would decide his sentence independent of the parties' suggestions. The court concluded that a factual basis for the plea existed and that the plea was voluntarily entered and, consequently, the court accept his guilty plea. However, the court reserved its determination of whether the plea agreement adequately reflected the seriousness of the behavior. The district court then directed the probation office to prepare a Presentence Report.

In preparing the Presentence Report, Probation Officer Dow interviewed McGowan and Amy Stickman, another informant. McGowan and Stickman told Ms. Dow that Defendant had delivered far more cocaine to them than Defendant admitted in the plea inquiry (perhaps between one-half pound and one pound of cocaine a week), had directed them in drug activity, and had possessed a firearm in connection with his drug business. Ms. Dow determined that the amount of illegal drugs involved warranted the imposition of a Class B felony offense, raising the maximum penalty to not less than five, nor more than forty, years. Ms. Dow arrived at a total offense level applicable under the sentencing guidelines of 28,[1] with the guideline sentence thereunder being from 78 to 97

---

1. Ms. Dow reached this result by estimating one ounce of cocaine per week for 32 weeks and adding amounts related to certain activities involving undercover agents or described by McGowan. This total yielded a base offense level of 26. The probation officer added two points for firearm possession under U.S.S.G. § 2D1.1(b)(1) and three points for supervision of at least two individuals under U.S.S.G. § 3B1.1(b). Garcia received a three point reduction for acceptance of responsibility.

months. Both parties then filed objections to the Presentence Report, arguing that information provided by McGowan could not be relied on because McGowan was not credible.

The court then held a series of hearings on three different days to address the discrepancy between the quantities stipulated to by the parties and the quantities estimated in the Presentence Report. Both parties stipulated that Garcia was involved in four discrete instances of delivering or possession of cocaine involving 96.95 grams. However, Judge Brett decided to examine McGowan and Stickman himself in order to assess their credibility, despite the parties' objections that the informants were not credible.[2] Both Stickman and McGowan, who testified a week apart, testified consistently with each other's in-court statements as well as with the information they had provided Ms. Dow in connection with the Presentence Report.

In assessing the credibility of McGowan, the judge relied in part on an investigation by Rod Baker, the Chief of Probation, who interviewed several police officers who had participated in investigations with McGowan. Mr. Baker's investigation revealed that three of four officers, including Officer Dwight Cole, indicated that they considered McGowan credible.[3] The government responded that Officer Cole denied to another party that he told Mr. Baker that he considered McGowan a credible witness. Judge Brett then questioned Mr. Baker concerning Officer Cole's statements, and Mr. Baker responded that the report accurately reflected information provided by Officer Cole. The following day, and immediately prior to the court's announcement of sentence, Defendant requested a continuance to subpoena Officer Cole. Judge Brett denied the continuance, pointing out that at various times during sentencing he offered Defendant and the government the opportunity to cross-examine witnesses called by the court and to present witnesses to refute the testimony of McGowan and Stickman, and that neither party took advantage of these opportunities except for the Defendant's cross-examination of McGowan.[4] At the point that Defendant wanted a continuance to subpoena Officer Cole the sentencing hearing had been closed except for allocution, and the court stated it would not delay proceedings further because the Defendant had plenty of opportunities to call Officer Cole earlier.

In announcing Defendant's sentence, the court found Defendant involved in distributing 499 grams of cocaine,[5] and found sufficient evidence to support the firearm enhancement and the enhancement for supervising at least two persons. The court commented that it considered McGowan credible because his testimony corroborated Stickman's testimony, Mr. Baker's investigation revealed that law enforcement officers considered McGowan credible, and McGowan testified to information that could incriminate him. The court also considered the fact that Defendant did not take the stand to deny the quantities and conduct to which McGowan and Stickman testified:

It was interesting to this court on the subject of quantities here that the defendant never got on the witness stand and under oath denied the testimony of either Stickman and/or McGowan, although he had every opportunity to do so, and certainly in those limited areas of role in the

---

**2.** Judge Brett told the parties that if the court concluded that Defendant distributed more than 500 grams of cocaine, the court would give Defendant the opportunity to withdraw from the plea agreement because Defendant's sentence would then be within a statutory 5 year minimum to 40 year maximum sentencing range, rather than the 0 to 20 year statutory range set forth in the plea agreement.

**3.** The government later stipulated that two Tulsa police officers who had not been interviewed by Mr. Baker would testify if called to serve as witnesses that they did not trust McGowan.

**4.** Defendant states that he refused to cross examine Stickman, who was the first informant to testify, to express his objection to the court's "unprecedented procedure." Defendant decided to cross examine McGowan after recognizing that Judge Brett was not going to stop the court's examination of witnesses.

**5.** The court stated that although it believed there was justification for finding higher drug quantities, it decided on 499 grams in order to preserve the plea agreement in light of the 0–20 years statutory maximum prison term.

offense, quantity of drugs, and guns, the Fifth Amendment is in no way implicated in this case.

(IV R.O.A. 200.)

The court adopted an offense level of 26, which included a three-point downward adjustment for acceptance of responsibility, with a corresponding guideline range of 63–78 months. The court then sentenced Defendant to 72 months imprisonment, followed by a term of three years supervised release, as well as a $2000 fine.

In a post-sentencing in camera hearing, Judge Brett stated that when judging McGowan's credibility, he placed some weight on the fact that McGowan was referred to in a FBI affidavit for a wiretap. Defendant's attorney objected to consideration of the affidavit because he had been unaware of it until the post-sentencing hearing.

## Standard of Review

■ We review the factual findings of a district court relating to sentencing issues for clear error. *U.S. v. Beaulieu*, 893 F.2d 1177, 1181–82 (10th Cir.), *cert. denied*, 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). In applying this standard, we do not disturb those findings unless the findings of the district court are "without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *Id.* at 1182. We review legal issues *de novo. U.S. v. Roberts*, 898 F.2d 1465, 1469 (10th Cir. 1990).

## I. The district court's discretion to enhance Defendant's sentence over the government's objections.

■ Defendant believes that the district court violated separation of powers principles by refusing to honor the government's stipulations regarding the drug quantity and credibility of McGowan and Stickman. Specifically, Defendant argues that the commentary to U.S.S.G. § 6B1.2—the guideline providing

that the court may accept a plea agreement dismissing one or more charges when the court determines that the remaining charges adequately reflect the seriousness of the actual offense—states that the guideline "does not authorize judges to intrude upon the charging discretion of the prosecutor." U.S.S.G. § 6B1.2 (commentary).

■ In the present case, however, Judge Brett did approve the prosecutor's *charge* of Count 5 and therefore did not intrude on any executive function. Instead, the judge declined to follow the government's recommendation concerning *sentencing.* The determination of a convicted offender's sentence is a matter within the discretion of the sentencing judge. *U.S. v. Robertson*, 45 F.3d 1423, 1437 (10th Cir.), *cert. denied*, ⸺ U.S. ⸺, 116 S.Ct. 133, 133 L.Ed.2d 81 (1995). *See also* Charles Alan Wright, 3 *Federal Practice and Procedure: Criminal 2d* § 526 at 88–89 (stating "Trial judges have few more important, or difficult, functions than that of sentencing. It is for the judge alone to discharge this weighty responsibility."). Therefore, the prosecution's role in sentencing is strictly advisory. *Robertson*, 45 F.3d at 1437. The district court may decline to follow a sentence recommendation when it finds the stipulated facts do not accurately reflect all relevant conduct bearing upon the guideline range. *U.S. v. Easterling*, 921 F.2d 1073, 1079 (10th Cir.1990), *cert. denied*, 500 U.S. 937, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991). *See also* U.S.S.G. § 6B1.4(d) (stating that the sentencing court is not bound by the parties' factual stipulations but may, with the aid of the presentence report, determine the facts relevant to sentencing).

■ Judge Brett acted within his discretion by investigating issues raised in the Presentence Report which conflicted with the government's stipulations. The judge had an obligation under the guidelines and Tenth Circuit precedent to consider whether the stipulated facts accurately reflected all conduct relevant to a proper sentence.[6] When

---

**6.** Defendant argues that under U.S.S.G. § 6A1.3(a), the court may resolve only disputed facts and that no dispute existed here because the government and Defendant were in agree-

ment. However, we do not read U.S.S.G. § 6A1.3 as limiting the judge's ability to determine facts relevant to the sentencing decision. Rather, it simply provides a procedural mecha-

the government refused to cooperate in the judge's efforts to confirm the Presentence Report, the court called and examined witnesses to verify the accuracy of the report. The court was not under any duty to accept the government's stipulation that the relevant conduct involved less than 100 grams of cocaine or that McGowan and Stickman were untrustworthy.[7]

## II. Procedural errors.

Defendant argues on appeal that the district court made several procedural errors in determining the quantity of the drugs, the possession of a firearm, and Defendant's role as a supervisor.

### A. The court's reference to Defendant's refusal to testify

■ Appellant argues that several times during the sentencing proceedings, as well as during the post-sentencing hearing, the court impermissibly took notice of the fact that Defendant chose not to testify to rebut McGowan's and Stickman's testimony, and that the court incorrectly decided that Defendant had waived his Fifth Amendment right against self-incrimination by pleading guilty. For example, at one point the court stated:

> Normally in a case like this a defendant does not have to take the witness stand certainly because it violates his right against self-incrimination under the Fifth Amendment of our Constitution. We don't have that in this case, and the reason we do not have that in this case, Mr. Garcia waived his right under the Fifth Amend-

ment when he came in and under oath chose to admit his drug distribution....

(IV R.O.A. 199–200.)

■ We agree with Defendant that the court erred in concluding that the Fifth Amendment did not continue to protect Defendant during sentencing because such testimony could have subjected him to further criminal liability.[8] "[T]he availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure it invites." *U.S. v. Rogers*, 921 F.2d 975, 979 (10th Cir.) (citing *In re Gault*, 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967)), *cert. denied*, 498 U.S. 839, 111 S.Ct. 113, 112 L.Ed.2d 83 (1990). Accordingly, "[t]here is no question but that the Fifth Amendment does offer protection in the sentencing process." *U.S. v. Jones*, 640 F.2d 284, 287 (10th Cir.1981). *See also Rogers*, 921 F.2d at 979 (noting that a defendant does not lose his Fifth Amendment protection by reason of his conviction of a crime); *Estelle v. Smith*, 451 U.S. 454, 462–63, 101 S.Ct. 1866, 1872–73, 68 L.Ed.2d 359 (1981) (holding Fifth Amendment applicable to penalty phase of a capital murder trial). Furthermore, Fifth Amendment protection continues during sentencing even when the defendant has pled guilty to a crime. *U.S. v. Lugg*, 892 F.2d 101, 102–03 (D.C.Cir.1989).

■ However, constitutional errors do not necessarily require reversal of a conviction. *U.S. v. Perdue*, 8 F.3d 1455, 1469 (10th Cir.1993).[9] In *Chapman v. California*, 386

---

nism to be observed in resolving disputes of fact. The judge remains ultimately responsible for determining the facts and must establish the relevant facts even if all the parties argue to the contrary.

**7.** Defendant attempts to analogize to established precedent that a judge may not grant a downward departure from the sentencing guidelines for substantial assistance unless the prosecution submits a motion for such a departure. *See, for example, U.S. v. Lee*, 989 F.2d 377, 379 (10th Cir.1993). This situation is readily distinguishable from the present case, however, because U.S.S.G. § 5K1.1 explicitly assigns to the prosecutor the determination of a downward departure due to substantial assistance. The government's motion accordingly serves a condition

precedent limiting the district court's authority to reduce a sentence when a defendant has substantially assisted. *Id.* (citing *U.S. v. Vargas*, 925 F.2d 1260, 1267 (10th Cir.1991)). Here, determining the drug quantity involved, as well as the possession of the firearm and Defendant's activity as a supervisor, were within the discretion of the court and were not contingent upon a government motion.

**8.** For example, Defendant's testimony that he distributed a certain amount of drugs or that he supervised other individuals could have enhanced further his offense level for sentencing purposes.

**9.** The standard for constitutional harmless error, applicable to the court's incorrect decision that

U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court held that a federal constitutional error can be ignored if the court is "able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. Although some constitutional errors can never be dismissed as harmless, *see Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986),[10] the Supreme Court has held that the harmless error doctrine applies to a prosecutor's improper comments on a defendant's silence at trial in violation of the Fifth Amendment Self–Incrimination Clause, *Chapman*, 386 U.S. at 24–26, 87 S.Ct. at 828–29 (finding there that the government had not established that such constitutional error was harmless). Similarly, we will uphold a sentencing court's determination of drug quantity despite a court's error that a defendant waived his self-incrimination rights if, absent the court's error, it is clear beyond a reasonable doubt that the court would have imposed the same sentence. *See Chapman*, 386 U.S. at 24–27, 87 S.Ct. at 828–30; *U.S. v. Hasting*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983) (applying the harmless error test to a prosecutor's error in commenting before the jury on the defendant's refusal to testify or to put on refutation evidence).

▄▄▄ In conducting harmless error analysis, we review the record *de novo*.[11] *Arizona v. Fulminante*, 499 U.S. 279, 295, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991). Having done so in this case, we conclude

beyond a reasonable doubt that the court would have reached the same determination of drug quantity, possession of a firearm and role as a supervisor absent its error in considering Defendant's failure to testify. Both Stickman and McGowan testified that Defendant dealt between one-half to a full pound of cocaine a week. The informants also testified that Defendant had possessed a gun and that he had supervised a number of other distributors. In determining Stickman and McGowan to be reliable regarding these statements, the court placed emphasis on the fact that their testimony, offered a week apart in the absence of each other's presence, substantially corroborated each other's testimony, as well as the Presentence Report. The court also considered the fact that McGowan testified under oath regarding information that could incriminate him with further criminal charges as well as Mr. Baker's report that several law enforcement officers considered McGowan to be credible. We therefore believe that the court could have relied on the informants' testimony to establish the higher drug quantity and enhancements independent of any relevance it placed on Defendant's failure to testify. Furthermore, although Defendant's counsel sought to impeach McGowan's general credibility, there is nothing in the record to suggest either that 499 grams of cocaine was not a very conservative estimate of the volume of cocaine dealt by the Defendant or that McGowan and Stickman lied when they testified regarding Defendant's possession of a

---

Defendant waived his Fifth Amendment right, is different from the nonconstitutional harmless error standard. *See U.S. v. Rivera*, 900 F.2d 1462, 1469–70 (10th Cir.1990).

**10.** The universe of these errors is extremely small, consisting only of errors that implicate a "structural defect," such as the complete denial of the right to counsel or denial of the right to an impartial judge. *See U.S. v. Hollis*, 971 F.2d 1441, 1454 n. 7 (10th Cir.1992) (citation omitted), *cert. denied*, 507 U.S. 985, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993).

**11.** It may be that this claim should be reviewed under the plain error standard because the Defendant waited until the post-sentencing hearing before objecting to the court's statements that Defendant had waived his Fifth Amendment rights. *See* Fed.R.Crim.P. 52(b). However, that

standard is even higher and merely corroborates the result we reach under a harmless error analysis. "To constitute plain error, the error must have been both 'obvious and substantial....'" *U.S. v. Massey*, 48 F.3d 1560, 1568 (10th Cir. 1995) (quoting *U.S. v. Gerber*, 24 F.3d 93, 95 (10th Cir.1994)). Here, we believe that the court's error was obvious, as our precedent clearly holds that the Fifth Amendment continues to protect defendants during sentencing. Yet, we do not consider such error to be substantial. "An error is substantial if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id*. The error here did not subject Defendant to unfair proceedings or jeopardize the integrity of the proceedings because the court did not rely significantly on its erroneous conclusion that Defendant had waived his right against self-incrimination. Instead, the court's decision centered on the corroborated testimony of two witnesses.

gun and supervision of other distributors. Thus, all of the evidence in the record supports the district court's findings, even though we disregard the district court's reference to the Defendant's failure to testify himself at the sentencing proceedings.[12]

### B. *The court's failure to inform Defendant of its consideration of the wiretap affidavit*

■ Second, Defendant argues that he was not given notice of information to be relied upon in determining his sentence as required by Fed.R.Crim.P. 32(c)(3)(A). At a post-sentencing hearing, Judge Brett informed Defendant's attorney for the first time that he had considered the fact that the government had thought enough of McGowan's credibility to include information from him in an affidavit for a wiretap in another criminal proceeding.

Rule 32(c)(3)(A) requires that the defendant be apprised of information to be relied upon in determining the sentence. Before imposing sentence, the rule requires that:

If the court has received information excluded from the presentence report under subdivision (b)(5) the court—in lieu of making that information available—must summarize it in writing, if the information will be relied on in determining sentence. The court must also give the defendant and the defendant's counsel a reasonable opportunity to comment on that information.

However, Defendant has not shown that this information was excluded from the Presentence Report under Rule 32(b)(5), which deals only with the exclusion of diagnostic opinions, sources of information obtained upon a promise of confidentiality, or other information which, if disclosed, might result in harm. Accordingly, the disclosure requirements of Rule 32(c)(3)(A) were not technically violated. Nevertheless, Rule 32(c)(1) provides that:

At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment ... on other matters relating to the appropriate sentence.

Here, counsel for the government and for the Defendant were not given the opportunity to comment on this supplemental indicia of McGowan's credibility until after the sentencing had occurred. Thus, it is clear that the district court erred in failing to follow Rule 32(c)(1).

■ However, we consider this error harmless, although we apply a different test than the standard we applied to the court's error in concluding that Defendant waived his Fifth Amendment right by pleading guilty. Because the court's failure to follow Rule 32 did not rise to the level of a constitutional error, we need only decide whether the error had a "substantial influence" on the sentencing determination or leaves one in "grave doubt" as to whether it had such effect. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). *See also* Fed.R.Crim.P. 52(a) (stating that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

■ Defendant has failed to prove that the court's failure to follow Rule 32 had a substantial influence on the ultimate sentence. In judging McGowan's credibility, the court placed the greatest significance on the fact that McGowan and Stickman corroborated each other. The court merely listed the McGowan affidavit in the other criminal action among a number of factors it considered in judging the credibility of McGowan, factors which included McGowan's self-incriminating testimony and statements of three law enforcement officers describing McGowan as reliable. Furthermore, the Defendant

---

12. Defendant's attorney told the court in the post-sentencing meeting that he did not cross-examine Stickman or more actively participate in rebutting the evidence presented to the court because he was "between a rock and a hard place." However, we find no justification for Defendant's failure to participate fully in the proceedings. Defendant could have objected to the court's practices and yet continued to attempt to rebut any evidence presented, without losing his right to challenge the court's handling of the proceedings on appeal. Instead, Defendant, with the exception of cross-examining McGowan, erroneously chose not to present any evidence or witnesses during the proceedings that would rebut the evidence before the court.

learned of the court's use of this information at a post-sentencing hearing conducted the same day the sentence was imposed. Neither then, nor on appeal, does Defendant argue that he could have challenged the use of the McGowan affidavit in a manner that would have impaired McGowan's credibility in the eyes of the court. Instead, Defendant fails to allege any facts or law that suggest the court's opinion of McGowan would have changed if Defendant had been aware of the McGowan affidavit prior to sentencing.[13] We will not reverse such an error when the Defendant fails to prove any prejudice whatsoever resulting from the error.

## C. *The reliability of the informants' testimony*

■■■ Defendant next argues that McGowan's and Stickman's testimony did not possess "sufficient indicia of reliability to support its probable accuracy," and therefore should not have served as a basis for the judge and probation officer's calculation of the estimated drug quantity. *See* U.S.S.G. § 6A1.3(a). In *U.S. v. Browning*, 61 F.3d 752 (10th Cir.1995), we concluded that the testimony of three informants who had histories of drug use, prior criminal records and incentives to minimize their own culpability possessed sufficient indicia of reliability to be considered by the district court. *Id.* at 754. We found such testimony to be sufficiently reliable in light of the district court's conclusions that the witnesses had personal knowledge of specific facts underlying the defendant's drug transactions. *Id.* We also considered it significant that the district

court determined the testimony to be reliable after observing the informants' demeanor in court and their clear and responsive answers to questioning. *Id.*

Similarly in the present case, McGowan and Stickman testified only as to their personal knowledge of specific facts relating to Defendant's drug transactions. McGowan's and Stickman's testimony sufficiently corroborated each other's statements—as well as the statements they made to the probation officer—to further indicate that the testimony was reliable. Although Stickman testified that McGowan purchased a half to a full pound of cocaine a week from Defendant and McGowan testified that he purchased only a half pound per week, both testified that Defendant regularly sold them drugs each week, that he had other distributors working for him and that he had possessed a gun in connection with his drug business. We also must place significance in the fact that Judge Brett determined the informants' testimony to be sufficiently reliable after observing their demeanor in court. *See U.S. v. Deninno*, 29 F.3d 572, 578 (10th Cir.1994) (holding that the credibility of a witness at sentencing is for the sentencing court, as the trier of fact, to analyze), *cert. denied,* ── U.S. ──, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995).[14]

Furthermore, we have held that courts may employ out-of-court statements not independently corroborated when the informant was identified. *See United States v. Ballard*, 16 F.3d 1110, 1115 n. 5 (10th Cir.), *cert. denied,* ── U.S. ──, 114 S.Ct. 2762, 129 L.Ed.2d 876 (1994). *Compare U.S. v. Ortiz,*

---

**13.** Defendant argues that the court in *U.S. v. Ortiz*, 993 F.2d 204, 208 (10th Cir.1993), held that a court cannot rely on the fact that a confidential informant provided reliable information to law enforcement officials in the past to conclude that further uncorroborated and out-of-court statements of the informant also must be reliable. *Ortiz*, however, is readily distinguishable. The court in *Ortiz* held only that the fact a confidential informant proved reliable in the past was not sufficient by itself and without corroboration to establish the disputed credibility of other out-of-court statements by the same informant. *Id.* at 208. In contrast here, McGowan and Stickman's testimony corroborated each other, and both testified in court and under oath. Therefore, the fact that McGowan had been considered reliable by the FBI in obtaining a wiretap

affidavit in another case was not the sole factor, nor even a very significant factor, in corroborating the information he provided.

**14.** Defendant points out that McGowan admitted during the sentencing hearing that he wanted Defendant to receive a lengthy sentence because he was afraid of Defendant. We do not consider this single statement sufficient to indicate that McGowan's testimony did not possess sufficient indicia of reliability in light of the fact that his testimony was corroborated with his statements to the probation officer as well as Stickman's testimony. *See Browning*, 61 F.3d at 754–55 (holding statements of informants sufficiently reliable even though the informants had incentives to minimize their own culpability).

993 F.2d 204, 207 (10th Cir.1993) (holding out-of-court statements by unidentified informants must have sufficient corroboration by other means). Because the statements the court relied on were testified to in court, under oath, and by identified informants, we consider them even more reliable than the statements we upheld in *Ballard* as possessing sufficient indicia of reliability. The fact that McGowan testified regarding conduct that could incriminate him in further criminal liability also enhances the reliability of his statements.

Finally, we note that Defendant failed to present any witnesses or evidence challenging the credibility of the informants and that the probation office presented evidence that three law enforcement officials who had worked with McGowan considered him to be credible.

D. *The court's denial of Defendant's motion for continuance*

■ Defendant also argues that Judge Brett's refusal to grant a continuance to allow Defendant to subpoena Officer Cole violated his due process rights. The court denied Defendant's request on the grounds that it had given Defendant opportunities earlier in the hearing to call Officer Cole and "as far as this court is concerned we've spent enough time hearing witnesses on this very subject."

■ A sentencing court has broad discretion respecting the scheduling of sentencing procedures. *U.S. v. Booth,* 996 F.2d 1395, 1397 (2d Cir.1993). "Absent a showing both that the denial was arbitrary and that it substantially impaired the defendant's opportunity to secure a fair sentence, [the reviewing court] will not vacate a sentence because a continuance was denied." *Id.* (citing *U.S. v. Prescott,* 920 F.2d 139, 146–47 (2d Cir. 1990)). In *Booth,* the court held that the sentencing judge did not abuse his discretion by refusing to grant a continuance when the court had previously granted defendant two continuances, even though the "proffered reasons for seeking a third continuance do not appear to have been frivolous...." *Id.* at 1398.

In the present case, Judge Brett had encouraged both Defendant and the government to call witnesses at various times during the sentencing hearing in order to clarify the dispute over the alleged drug quantities. Neither party, however, took advantage of Judge Brett's suggestion until immediately prior to the court's determination of Defendant's sentence. Defendant knew on the day prior to the closing of the proceedings that Judge Brett considered Mr. Baker's report that Officer Cole thought McGowan was credible. Mr. Baker informed the court that Officer Cole was willing to appear in court at that hearing or at any time summoned by the court in order to testify regarding that statement. The Court even reminded Defendant that it had offered Defendant the opportunity to call Officer Cole and that without Officer Cole's testimony, it would have to rely on Mr. Baker's report. Notwithstanding these facts, Defendant waited until the end of the proceedings on the following day before suggesting to the court that the final sentencing be delayed in order to subpoena Officer Cole. We therefore do not believe that Judge Brett abused his discretion in denying Defendant's request at such a late stage in the proceedings, particularly when Defendant could have raised the issue of subpoenaing the witness at an earlier point.

E. *The government's failure to prove the factual grounds for enhancement by a preponderance of the evidence*

■ Defendant argues that the government bears the burden of proving the quantity of drugs involved and the factual prerequisites for sentence enhancements by a preponderance of the evidence, and here the government presented no evidence proving the quantities and conduct to which McGowan and Stickman testified. *See, for example, U.S. v. Richards,* 27 F.3d 465, 468 (10th Cir.1994) (noting that the burden of proving additional quantities of drugs is on the government). However, the court is not foreclosed from establishing facts when, as here, the government refuses to present any evidence and the Presentence Report suggests evidence exists warranting a higher base amount of drugs and total offense level. Here, the court properly employed its discretion to decide a sentence by determining whether a preponderance of the evidence warranted a sentence greater than the government's recommendation.

### F. The court's failure to consider the government's view

Finally, Defendant argues that Judge Brett erred in failing to give adequate consideration to the government's statements that Stickman and McGowan were unreliable. However, there is no evidence that the judge failed to consider the government's comments in reaching his conclusions. Instead, it appears that the judge merely disagreed with the government when he decided in his discretion that Stickman's and McGowan's testimony was reliable.

### Conclusion

Having reviewed the transcript of the sentencing proceedings and the issues raised by the Defendant, we conclude that the proceedings below were conducted fairly and consistent with Defendant's due process rights. Therefore, for the foregoing reasons, we AFFIRM the decision of the district court sentencing Defendant to 72 months imprisonment.