F I L E D
United States Court of Appeals
Tenth Circuit

JUN 7 2004

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

STEVEN JOE GATEWOOD,

    Defendant - Appellant.

No. 03-3163

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 02-CR-40117-JAR)**

---

Submitted on the briefs:[*]

Eric F. Melgren, United States Attorney and Nancy Landis Caplinger, Assistant
United States Attorney, Topeka, Kansas, for Plaintiff - Appellee.

David J. Phillips, Federal Public Defender and Marilyn M. Trubey, Assistant
Federal Public Defender, Topeka, Kansas, for Defendant - Appellant.

---

Before **KELLY**, **ANDERSON**, and **HENRY**, Circuit Judges.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause therefore is ordered submitted without oral argument.

**KELLY**, Circuit Judge.

Defendant-Appellant Steven Joe Gatewood pleaded guilty to possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g). He was sentenced to a term of imprisonment of ninety-seven months, to be followed by three years of supervised release. In arriving at the term of ninety-seven months, the district court denied a reduction in offense level for acceptance of responsibility and enhanced the offense level for possession of three or more firearms, possession of a stolen firearm, and possession of a firearm in connection with another felony offense–specifically the distribution of methamphetamine. Mr. Gatewood appeals, contending that the district court erred in (1) refusing to grant a reduction for acceptance of responsibility; (2) enhancing the offense level for possession of three or more firearms; and (3) enhancing the offense level for possession of a firearm in connection with another felony offense. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## Background

On July 18, 2002, law enforcement officers arrived at Mr. Gatewood's rural Kansas home in response to a 911 call regarding an accidental shooting. The officers discovered that a two-year-old child, the son of Mr. Gatewood's

girlfriend Nicole Ouimette, had died from a self-inflicted gunshot wound. A Glock 9mm semi-automatic pistol was found on the floor next to the child. An empty gun safe located in Mr. Gatewood's bedroom was open and the key was in the lock. A second gun cabinet in the basement was also found unlocked and empty, although a 7mm rifle was found on a shelf in one of the closets. An anhydrous ammonia tank was also found in a shed behind the residence.

The police interviewed everyone at the scene, including Mr. Gatewood, Ms. Ouimette, and Christina Gatewood, Mr. Gatewood's niece. All three maintained that they had been sleeping and did not hear the gunshot. They also maintained that the gun had been locked in the gun safe, and that they assumed the child must have found the key and unlocked the safe in order to obtain the weapon. The keys to the safe were kept on the headboard of Mr. Gatewood's bed. 5 R. at 4-5, ¶ 10-11.

Mr. Gatewood acknowledged that the gun was his and told the police Ms. Ouimette had given him the gun just a few weeks earlier. He did inform the police that he was illegally in possession of the weapon due to his prior felony conviction. He also admitted that he had been trafficking in methamphetamine but maintained that he had been "clean" for about two months. He stated that people nevertheless still frequently came to his home looking for methamphetamine. Id. at 5, ¶ 12-13.

Ms. Ouimette informed investigators that she had moved in with Mr. Gatewood only a few weeks before the shooting. Originally she told the officers that she had purchased the pistol for her own protection. She later said that she purchased the gun for Mr. Gatewood, even though she knew he was a convicted felon and could not be in possession of the gun. Id. at 5, ¶ 14. In a subsequent interview, she admitted that the previous statement was a story concocted with Mr. Gatewood and told the police the gun was Mr. Gatewood's and that he was in possession of the gun before she moved in with him. Id. at 7, ¶ 22. Ms. Ouimette also told police she had received methamphetamine from Mr. Gatewood just two or three days before the shooting. Id. at 5, ¶ 15.

Upon further investigation, the officers received additional information from various sources about Mr. Gatewood's illegal conduct. They learned that five other people had been at the residence early in the morning before the shooting. Mike Bacon, a person known by law enforcement as a "methamphetamine cook," had been living with Mr. Gatewood and was at the house the morning of the shooting. Id. at 6, ¶ 17. Mr. Bacon left the house before the police arrived and took with him a shotgun and a rifle when he left. Id. at 7-8, ¶ 23, 28, 29.

Several people made statements to investigators regarding Mr. Gatewood's possession of guns and drug use. In addition to the Glock pistol and the rifle

found at the residence on the day of the shooting, there was evidence Mr. Gatewood was in possession of at least one other firearm. Various people spoke with investigators regarding a black pistol, different from the Glock, that Mr. Gatewood had in his possession. They also told the police he often left the gun out of the safe and unattended. On one occasion, Mr. Gatewood answered the door with a gun aimed at his visitors and then went into a back room where he was cutting up methamphetamine. Id. at 7, ¶ 21.

On February 10, 2003, Mr. Gatewood pleaded guilty to possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g). As part of the plea agreement, the government agreed to (1) recommend a sentence at the low-end of the applicable guideline range; (2) recommend that Mr. Gatewood receive a three-level reduction in the applicable offense level for acceptance of responsibility; and (3) not request an upward departure so long as the defendant did not request a downward departure. 1 R. Doc. 30, Att. 1 at 2-3.

At the change of plea hearing, Mr. Gatewood received the government's petition to revoke his conditions of release (bond) based upon positive tests for methamphetamine. A hearing on the revocation of Mr. Gatewood's conditions of release was scheduled for that afternoon. At the hearing, the court heard testimony from the probation officer who was supervising Mr. Gatewood's release regarding six sweat patches worn by him during the period of his pretrial release

that had tested positive for methamphetamine use. The court also accepted into evidence the laboratory reports reflecting the positive drug tests. The court found by clear and convincing evidence that Mr. Gatewood had violated the conditions of his release and ordered that he be detained pending sentencing. 3 R. Doc. 54 at 25-26.

Prior to sentencing, a presentence report was prepared. The report recommended that Mr. Gatewood's offense level not be reduced for acceptance of responsibility based on his use of controlled substances while on bond. 5 R. at 12. The report also recommended that the offense level be enhanced for possession of three of more firearms, possession of a stolen firearm, and possession of a firearm in connection with another felony. Id. at 11. Mr. Gatewood filed an objection to the recommendations. 1 R. Doc. 40.

At sentencing, the government took the position that Mr. Gatewood's offense level should be reduced for acceptance of responsibility. 4 R. Doc. 55 at 6. The government did not advocate for the enhancements, and stated that the information available was of "relatively dubious credibility." Id. The court nevertheless called the probation officer who prepared the report as a witness, and she explained the basis for her recommendations. The investigative reports relied on by the probation officer were also admitted into evidence. Id. at 8-9, 27.

The district court denied a reduction in offense level for acceptance of

responsibility based on Mr. Gatewood's alleged use of methamphetamine and Mr. Gatewood's false statements. The court also enhanced the offense level for possession of three or more firearms, possession of a stolen firearm, and possession of a firearm in relation to distribution of methamphetamine. Mr. Gatewood's total offense level was calculated at 28 and his criminal history category at 3, giving the court a sentencing range of 97-120 months, with a requirement by statute that the sentence be no more than 10 years. He was sentenced to a term of 97 months, followed by three years of supervised release. Id. at 46.

## Discussion

"When reviewing an application of the Sentencing Guidelines, we review the district court's factual findings for clear error and questions of law de novo." United States v. Hurlich, 293 F.3d 1223, 1227 (10th Cir. 2002). The "quantum of proof required for factual determinations under the Sentencing Guidelines is a preponderance of the evidence and the burden of proof generally is allocated to the government for sentence increases and to the defendant for sentence decreases." United States v. Rutter, 897 F.2d 1558, 1560 (10th Cir. 1990).

A. Denial of Adjustment for Acceptance of Responsibility

Mr. Gatewood initially challenges the district court's refusal to grant a

reduction in his offense level for acceptance of responsibility. Under USSG § 3E1.1(a), a defendant who "clearly demonstrates acceptance of responsibility for his offense" is entitled to receive a two-level decrease in his offense level. Under the Sentencing Guidelines, the defendant bears the burden of establishing that he is entitled to a sentence reduction for acceptance of responsibility by a preponderance of the evidence. United States v. Marquez, 337 F.3d 1203, 1209 (10th Cir. 2003). "[T]he trial court's determination of whether a defendant has accepted responsibility is subject to great deference on review and should not be disturbed unless it is without foundation." United States v. Amos, 984 F.2d 1067, 1071-72 (10th Cir. 1993).

Mr. Gatewood asserts he demonstrated his acceptance of responsibility by a preponderance of the evidence, pointing to his timely plea of guilty, his statement of acceptance of responsibility in which he expressed remorse over the boy's death, and the government's recommendation that he receive such a reduction. The district court nevertheless denied the adjustment for acceptance of responsibility based on Mr. Gatewood's continued use of drugs while on pretrial release and his false statements to his probation officer and the police during the investigation, concluding that the defendant "never accepted responsibility, full responsibility, for possession of the Glock firearm and all of the consequences that flowed from that on July 18th of 2002." 4 R. Doc. 55 at 33.

Mr. Gatewood challenges the court's reliance on the evidence of drug use, arguing such evidence "did not bear the necessary indicia of reliability upon which the lower court could reasonably have found that he violated the conditions of release by using methamphetamine." Aplt. Br. at 7. Initially we note that a defendant's use of drugs in violation of his conditions of release may be considered in determining whether the defendant has accepted responsibility for his actions. See United States v. Walker, 182 F.3d 485, 488 (6th Cir. 1999); see also United States v. Hromada, 49 F.3d 685, 691 (11th Cir. 1995); United States v. McDonald, 22 F.3d 139, 143 (7th Cir. 1994). The guidelines state that a defendant's voluntary withdrawal from criminal conduct is a relevant consideration in determining whether to grant a reduction for acceptance of responsibility. USSG § 3E1.1, cmt. n.1(b). In addition, "the guidelines do not prohibit a sentencing court from considering, in its discretion, criminal conduct unrelated to the offense of conviction in determining whether a defendant qualifies for an adjustment for acceptance of responsibility under § 3E1.1." United States v. Prince, 204 F.3d 1021, 1024 (10th Cir. 2000). With regard to drug use specifically, the guidelines state that, although "lying to a probation or pretrial services officer about defendant's drug use while on pre-trial release" is not conduct that ordinarily warrants an upward adjustment for obstructing justice under USSG § 3C1.1, "such conduct may be a factor in determining whether to

reduce the defendant's sentence under § 3E1.1." USSG § 3C1.1, cmt. n.5.

Mr. Gatewood nevertheless argues that the evidence of drug use in this case did not bear the necessary indicia of reliability. We disagree. There is a "longstanding principle that sentencing courts have broad discretion to consider various kinds of information" during sentencing. United States v. Watts, 519 U.S. 148, 151 (1997). This principle is codified at 18 U.S.C. § 3661, which states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." The Sentencing Guidelines reaffirm this principle, stating that "[i]n determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3, cmt. (citations omitted); see also United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995); United States v. Browning, 61 F.3d 752, 755 (10th Cir. 1995); United States v. Beaulieu, 893 F.2d 1177, 1181 (10th Cir. 1990). Thus the court is not restricted by the federal rules of evidence, and hearsay may be considered as long as it bears "some minimal indicia of reliability." Browning, 61 F.3d at 755.

At the sentencing hearing, the probation officer testified regarding the

contents of the lab report submitted from PharmChem showing the positive drug test results.[1]  4 R. Doc. 55 at 9.  She testified regarding when the sweat patches were applied, when they were removed, and when they tested positive for methamphetamine use.  She also testified that Mr. Gatewood admitted to using methamphetamine once while on release in December, prior to pleading guilty in this case.  Id. at 20.  On cross-examination, she admitted that she did not apply the patches, remove the patches, send them to the lab, or test them, and did not know the methods by which the patches were tested.  Id. at 18.  Rather, she relied on the laboratory report from PharmChem and the pretrial services officer's notes.  Because such hearsay is not prohibited at the sentencing stage, however, our inquiry is only whether the evidence had "sufficient indicia of reliability to support its probable accuracy."  USSG § 6A1.3, cmt.

---

[1]In his brief, Mr. Gatewood initially discusses the introduction of evidence of drug use at the bond revocation hearing.  He asserts his counsel received the petition to revoke his conditions of release the morning of the plea, and that the hearing was held that afternoon, giving the "defense very little time to prepare to meet the allegations."  Aplt. Br. at 9.  He asserts that the district court erred in admitting the testimony of the pretrial services officer at the hearing based on hearsay and a lack of foundation.  However, Mr. Gatewood did not appeal the revocation of his conditions of release, and it does not appear the sentencing court relied on its earlier factual findings in arriving at its conclusion that Mr. Gatewood had not accepted responsibility.  The court took evidence on Mr. Gatewood's alleged drug use and came to the conclusion that Mr. Gatewood used drugs while on pretrial release in violation of his release conditions.  4 R. Doc. 55 at 27-33.  We also note that Mr. Gatewood did not make any objection regarding the timing of the revocation hearing, nor did he present any contrary evidence (about the drug test results) at either that hearing or his sentencing hearing.

Mr. Gatewood relies on United States v. Snyder, 187 F. Supp. 2d 52, 58-62 (N.D.N.Y. 2002), to support his argument that the sweat patch tests are unreliable. In Snyder, the court discussed at length the use of sweat patches to detect drug use, the procedures involved in testing, and the reliability of the testing. The court concluded that "the sweat patch is generally reliable for drug testing purposes," although it is "susceptible to outside environmental contamination in limited situations." Id. at 59. Given that the defendant in Snyder worked in a job where he sweated profusely and lived with someone who used drugs in the home, the court rejected the reliability of the tests in that specific instance and held that a violation of the defendant's conditions of release was not established by a preponderance of the evidence. Id. at 61.

In this case, Mr. Gatewood did not offer any evidence to counter the reliability of the results based upon the sweat patches. Although his counsel did bring out on cross-examination at the revocation hearing the fact that Mr. Gatewood works in a job where he sweats a lot, that his clothing might be contaminated given prior use, and that he was on various medications while being tested, he did not bring this information to the district court at the time of sentencing. 4 R. Doc. 55 at 17-22. Although the sweat patches indicated a total of six total positive tests, the court noted only four positive results given that two of the positive results could be attributed to residual use. Most importantly,

although Mr. Gatewood generally denied any use of methamphetamine while on pretrial release, he did admit that he had used methamphetamine at least once during the relevant period. Id. at 19. Given the number of positive results and his admission to use on at least one occasion, the evidence of drug use in violation of his conditions of release in this case bears at least the minimum required indicia of reliability.

The court's consideration of Mr. Gatewood's false statements was also not in error. Mr. Gatewood changed his stories regarding his ownership and possession of the gun on several occasions. He did not take full responsibility for his ownership of the gun or for the fact that he did not always keep it locked up. As the district court noted, he told an "outrageously preposterous story" about how the gun was safely locked up and how the two year old boy must have found the keys, unlocked the safe, and removed the gun in order to shoot himself. 4 R. Doc. 55 at 32. Several people made statements that he did not always keep the guns in his house secure, even when children were around. 5 R. at 6-7, ¶¶ 19, 21, 26. Although Mr. Gatewood argues that any false statements are generally irrelevant to whether he accepted responsibility for this crime, we disagree.

"A defendant has acted in a manner inconsistent with [an] acceptance of responsibility if he or she 'falsely denies . . . relevant conduct.'" United States v. Sarracino, 340 F.3d 1148, 1174 (10th Cir. 2003) (quoting USSG § 3E1.1, cmt.

n.1(a)). Even if investigators were not hindered in their investigation by his statements, as Mr. Gatewood asserts, the court may still consider his statements in determining whether he has accepted responsibility. See USSG § 3C1.1, cmt. n.5 (noting conduct that might affect whether an acceptance of responsibility adjustment should be applied includes "making false statements, not under oath," and "providing incomplete or misleading information, not amounting to a material falsehood"). Although he appears willing to accept the consequences of his conviction, he has never honestly admitted the conduct underlying his conviction. See United States v. Gassaway, 81 F.3d 920, 922 (10th Cir. 1996). As the district court concluded, it appears that "[D]efendant has not been entirely truthful about his connection with that pistol." 4 R. Doc. 55 at 29. It was not error for the court to take into account his false statements to find that he has not clearly accepted responsibility for his crime.

The burden is on the defendant to prove that he is entitled to an adjustment. While the entry of a guilty plea and other relevant conduct may be "significant evidence of acceptance of responsibility," such evidence "may be 'outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.'" United States v. Hawley, 93 F.3d 682, 689 (10th Cir. 1996) (quoting USSG § 3E1.1, cmt. n. 3). "A defendant who enters a plea of guilty is not entitled to an adjustment under [§ 3E1.1] as a matter of right." USSG §

3E1.1, cmt. n.3; see United States v. Topete-Plascencia, 351 F.3d 454, 460 (10th Cir. 2003). "True acceptance of responsibility for a crime includes acceptance of whatever justice society deems proper in response." United States v. Swanson, 253 F.3d 1220, 1225 (10th Cir. 2001). The district court's determination that Mr. Gatewood failed to take adequate responsibility for his offenses, given his continued drug use and false statements, was not in error.

B. Enhancement for Three or More Firearms

Mr. Gatewood also appeals the district court's enhancement of his offense level for possession of "three or more firearms" under USSG § 2K2.1(b)(1)(A). Mr. Gatewood asserts the district court abused its discretion by calling the probation officer as a witness, pointing to the fact that the burden is on the government to prove an enhancement is warranted. Mr. Gatewood also argues that even if the court did not err in allowing the testimony, the evidence was unreliable and should not have been considered.

"It is the government's burden to prove the facts supporting a sentence enhancement by a preponderance of the evidence." United States v. Martinez-Villalva, 232 F.3d 1329, 1333 (10th Cir. 2000). Even though the government bears the burden of proof with regard to enhancements, however, the "determination of a convicted offender's sentence is a matter within the discretion of the sentencing judge." United States v. Garcia, 78 F.3d 1457, 1462 (10th Cir.

1996). Before making the sentencing determination, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." United States v. Grayson, 438 U.S. 41, 50 (1978) (internal quotation marks and citations omitted). The sentencing judge is not bound by the government's recommendations, and the judge has an independent obligation under the guidelines and Tenth Circuit precedent to make sure that the court considers all conduct relevant to a proper sentence. Garcia, 78 F.3d at 1462; see also USSG § 6B1.4(d), & cmt. (contemplating an active role on the part of the sentencing judge in determining the factors relevant to the determination of sentence).

The district court is not foreclosed from independently establishing facts when the government, although it carries the burden, fails to present any evidence and the presentence report suggests evidence exists that warrants a higher offense level than the government's recommendation. Garcia, 78 F.3d at 1467. In doing so, the court may act within its discretion and investigate issues raised in the presentence report that may conflict with the government's recommendations, including "call[ing] and examin[ing] witnesses to verify the accuracy of the [presentence] report." Id. at 1463; see also Fed. R. Evid. 614 (authorizing judges to call and interrogate witnesses). Unlike in United States v. Guzman, 318 F.3d 1191, 1198 (10th Cir. 2003), the court's actions in this case did not impermissibly

shift the burden to the Defendant. The court did not abuse its discretion by calling the author of the presentence report to testify with regard to her investigation.

Mr. Gatewood asserts that even if the testimony is considered, there is no reliable factual basis for the district court's finding that Mr. Gatewood possessed three or more firearms. Mr. Gatewood relies on the fact that only two weapons were found in the residence when it was searched by law enforcement officers. However, the probation officer testified to numerous statements from the police reports that support the finding that Mr. Gatewood was in possession of three or more firearms. These statements were unchallenged and corroborate one another–they indicate Mr. Gatewood was in possession of a black pistol and at least one other rifle. Such statements may be considered, despite the fact that they constitute hearsay.

We have found that where a preparing officer's recommended enhancement is based solely on the unsworn testimony of a girlfriend taken over the phone, the statements did not meet the minimal indicia test. Fennell, 65 F.3d at 813. This case is markedly distinguishable given that the police officers took the statements in person from several people. The evidence of Mr. Gatewood's possession of three or more firearms bears the necessary indicia of reliability, and the court did not err in considering the evidence. The enhancement was proper.

C. Enhancement for Possession of a Firearm in Relation to Another Offense

Finally, Mr. Gatewood asserts that the court erred in enhancing his offense level for possession of a firearm in relation to another offense. The burden of proof with regard to the enhancement falls on the government. In support of his argument against an enhancement, Mr. Gatewood argues that the evidence relied upon by the court did not bear the necessary indicia of reliability, and that even considering the evidence, the evidence was insufficient to support a finding that Mr. Gatewood possessed a firearm in relation to the offense of distribution of methamphetamine beyond a preponderance of the evidence.

An enhancement by two levels is appropriate under USSG § 2K2.1(b)(5) if "the defendant used or possessed any firearm or ammunition in connection with another felony offense." A "felony offense" means any "offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." USSG § 2K2.1, cmt. n.7. "[W]e have generally held that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under § 2K2.1(b)(5) is appropriate." United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998); see also United States v. Gomez-Arellano, 5 F.3d 464, 466-67 (10th Cir. 1993). However, the enhancement is not appropriate if possession of the weapon "is coincidental or entirely unrelated to the offense." Id. at 467.

We have held that a "weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)." Bunner, 134 F.3d at 1006. The failure to find the Glock pistol in proximity to narcotics at the time it was seized in this case, however, does not mean that the weapon nevertheless has not facilitated or potentially facilitated the distribution of methamphetamine. Here the court relied on (1) the defendant's own admission that he had been trafficking methamphetamine, but had been "clean" for two months; (2) the defendant's acknowledgment that people had come to the house on the morning of the shooting, potentially looking to obtain methamphetamine; (3) witnesses' statements that the defendant sold methamphetamine; (4) the fact that Mr. Gatewood distributed methamphetamine to his girlfriend just two or three days prior to the shooting; and (5) the fact that he answered the door two months before the shooting with a gun in his hand while drugs were present in the house. 4 R. Doc. 55 at 38-39.

Given several statements that corroborate one another concerning Mr. Gatewood's drug distribution and his possession of firearms during this time, sometimes in close proximity with drugs, the record supports the enhancement. Most importantly, Mr. Gatewood admitted to trafficking methamphetamine up until a few months previously, and there is overwhelming support that he was in possession of guns during that time. Thus there is a clear nexus between the

firearms and Mr. Gatewood's trafficking activities.

Mr. Gatewood contends that he had not trafficked methamphetamine for two months and therefore the weapon should not be found to have facilitated this offense given this gap in time. Even if we ignore the evidence that Mr. Gatewood had distributed methamphetamine to his girlfriend just a few days earlier and assume Mr. Gatewood had ended methamphetamine distribution a few months previously, the enhancement is nevertheless appropriate. An enhancement may apply even where the alleged felony offense under the enhancement occurred weeks or months before the date of the original offense. See United States v. Draper, 24 F.3d 83, 85 (10th Cir. 1994).

Mr. Gatewood, as a felon, pleaded guilty to unlawfully possessing firearms. The record supports the district court's findings that his possession of the firearms facilitated or had the potential to facilitate his distribution of methamphetamine. Thus Mr. Gatewood falls within the provisions of USSG § 2K2.1(b)(5), and we affirm the enhancement for possession of a firearm in connection with another felony offense. See Draper, 24 F.3d at 86.

AFFIRMED.