# IN THE COURT OF APPEALS OF IOWA

No. 18-0382
Filed May 2, 2018

**IN THE INTEREST OF A.W. and T.W.,**
**Minor Children,**

**K.W., Mother,**
　　　　Appellant.
_____

Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.

A mother appeals a juvenile court removal order. **AFFIRMED.**

Jeannine L. Roberts, Cedar Rapids, for appellant mother.

Angela M. Railsback of Railsback Law Office, Cedar Rapids, for appellee father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Julie G. Trachta of Linn County Advocate, Inc., Cedar Rapids, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, Judge.**

The mother appeals a juvenile court order removing A.W., born December 2005, and T.W., born November 2010, from her custody. The mother claims the children should have remained in her custody under Iowa Department of Human Services (DHS) supervision and she should have been relieved from sweat-patch testing due to skin irritation.

A.W. and T.W. were brought to the attention of DHS in July 2016 due to concerns of drug abuse and domestic violence between the father and mother. Both parents admit to regular cocaine use prior to March 2016. The children were adjudicated children in need of assistance (CINA) in September 2016. The father and mother are separated, and the mother lives with her parents. Prior to the children's removal, the parents shared care of the children.

In December, the children were removed after the mother submitted a sweat patch that tested positive for cocaine. The mother denied drug use and claimed the patch had fallen off and was contaminated. The children were returned to her care on May 1, 2017. On May 11, the children were again removed from their mother's care due to a positive sweat-patch test. The children's removal was reviewed in an October hearing, and the court ordered custody of the children remain with their father. The mother appeals.

The mother argues the court erred in finding the children could not remain in the mother's home. *See* Iowa Code § 232.102 ("Custody of the child should not be transferred unless the court finds there is clear and convincing evidence that . . . [t]he child cannot be protected from some harm which would justify the adjudication of the child as a [CINA]." She argues there is not clear and convincing

evidence of her continued drug use. The mother argues the court should not have relied upon her positive sweat-patch tests as sufficient proof of cocaine use but instead should have relied on her negative urine analyses (UAs) and hair test.

Our review of an order arising out of a CINA proceeding is de novo. *In re K.B.*, 753 N.W.2d 14, 15 (Iowa 2008). In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "Our primary concern is the children's best interests." *Id.* "Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (citations omitted).

The mother contests the reliability of sweat-patch testing. Since November 2016, the mother has tested positive for cocaine use on six sweat-patch tests. She refused sweat-patch testing after August 2017. A sweat-patch test involves an absorbent pad placed on clean skin and sealed to the skin with an adhesive. The patch then remains on the body for a period of days. The mother contests her positive sweat-patch results because she tested negative for cocaine use on a hair test and UAs during some of the same time periods as her positive sweat-patch tests.

At the review hearing, the mother presented testimony from her primary-care provider, Alindsey Gengler, an advanced practice registered nurse. Gengler is not qualified as an expert in the field but reviewed medical literature on the subject of drug testing. Gengler concluded it was possible for the mother's body to have stored cocaine in her cells for a period of thirteen to eighteen months, causing the patch to test positive when the mother had not used drugs. Gengler

also claimed it was improbable for the mother to use a small enough amount of cocaine as to produce a positive sweat-patch test but a negative UA or hair test.

Dr. Leo Kadehjian, a forensic toxicologist and expert witness for the State, testified it is possible for a person to have an accurate positive sweat-patch test and a negative UA or hair test. He testified a sweat-patch test is designed to detect smaller amounts of drugs that UAs and hair tests may not detect. Dr. Kadehjian testified regarding the length of time tested: a UA tests for use for one to two days following use, whereas a sweat patch can test for use one to two days before the patch is placed as well as the days the user is wearing a patch, typically up to a week. A person could have a patch applied, use drugs the same day, and perform a clean UA three days later but test positive for drugs on a swea-patch test. He also testified regarding the procedure for hair testing, including that a hair test measures about eighty-eight days worth of data, but using drugs for a small percentage of those eighty-eight days may not be detected. A hair test might not indicate drugs used in the two weeks immediately prior to the test. Dr. Kadehjian testified to the ease of manipulating a UA by drinking large quantities of water for fifteen or twenty minutes before the test and manipulating a hair test by dying, bleaching, or shampooing the hair.

Dr. Kadehjian dismissed Gengler's theory that the mother's body stored cocaine in her cells for several months. He testified there is no peer-reviewed published literature to support a positive test result eight months or more after use.

Other courts have found that sweat-patch tests are a generally reliable method for determining drug use. *See United States v. Gatewood*, 370 F.3d 1055,

1060–62 (10th Cir. 2004), *vacated on other grounds by* 543 U.S. 1109 (2005); *United States v. Bentham*, 414 F. Supp. 2d 472, 473–74 (S.D.N.Y. 2006).

We find there is clear and convincing evidence of the mother's drug use. Dr. Kadehjian testified as to why the mother could have tested positive for cocaine use on her sweat-patch test and yet have a negative UA or hair test. We find his testimony reliable. The mother's six positive sweat-patch tests are sufficient proof of her drug use and clear and convincing evidence that the children should not be returned to the mother's custody.

The mother also argues she should not have been ordered to continue sweat-patch testing because it irritated her skin. The mother submits a letter from Gengler stating the mother should not wear a sweat patch, but it is unclear whether Gengler believes the patch is inappropriate because she believes it is inaccurate or because she is concerned about the mother's skin irritation. At the hearing, Gengler testified she is unqualified to determine whether the mother is allergic to the adhesive in the patch but said the mother could take an over-the-counter medication to lessen her irritation. In light of the accurate positive sweat-patch tests and negative UAs and hair test, it is apparent UAs and hair testing alone would not provide the court with accurate information on the mother's drug use. Further, the mother does not cite any authority that this court should order discontinuation of sweat-patch testing. As such, we decline to address this issue.

Finally, the mother argues reasonable efforts have not been made to alleviate the need for out-of-home placement. The mother argues reasonable efforts have not been made because she has not been allowed to use UAs and hair tests as an alternative to sweat-patch testing. Here, the mother is being given

an opportunity to demonstrate she is sober through drug[1] testing. In light of the mother's past negative UAs and hair tests but positive sweat-patch tests, we find it is not unreasonable to require the mother to complete sweat-patch testing.

We find there is clear and convincing evidence of the mother's continued drug use and affirm the juvenile court's order continuing removal of the children from the mother's custody.

**AFFIRMED.**

---

[1] We also are not persuaded by the mother's argument that the department failed to make reasonable efforts toward reunification by declining to provide more frequent UA tests.