FILED
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**December 14, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

———————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL HANS OLOA,

    Defendant - Appellant.

No. 22-6046
(D.C. No. 5:21-CR-00147-SLP-1)
(W.D. Okla.)

———————————————————

### ORDER AND JUDGMENT[*]

———————————————————

Before **McHUGH**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

———————————————————

Defendant-Appellant Michael Hans Oloa pleaded guilty to one count of

possessing a firearm after having been convicted of a felony, in violation of 18

U.S.C. § 922(g)(1).[1] The charge arose out of Mr. Oloa's possession and use of a

firearm to shoot at federal officers as they tried to apprehend him while he fled from

a casino. The district court applied a cross-reference to attempted murder when

calculating Mr. Oloa's advisory Guidelines range under the United States Sentencing

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

[1] Mr. Oloa also pleaded guilty to one count of assaulting a federal officer, in
violation of 18 U.S.C. § 111(a) and (b).

Guidelines. Applying this cross-reference resulted in a Guidelines range of 151 to 188 months' imprisonment.

Mr. Oloa challenges his sentence on one ground, arguing the district court erred by applying the cross-reference for attempted murder when calculating his Guidelines range. Specifically, he contends the district court should not have applied any cross-reference because the evidence does not support a finding that he intended to kill the officers during the assault. We disagree. The district court did not clearly err in finding Mr. Oloa intended to kill the officers when he shot at them during the foot chase. Accordingly, we affirm.

## I.    BACKGROUND

### A.    Factual History

Mr. Oloa was banned from Comanche Nation Casino in Lawton, Oklahoma. On May 25, 2021, two Comanche Nation Tribal Officers responded to a call from the casino after Mr. Oloa was seen trespassing on the premises. When the officers contacted Mr. Oloa in the casino, he gave them false identification information. After the officers asked about the other identification information Mr. Oloa had in his possession, Mr. Oloa ran out of the casino and a foot chase ensued into the parking lot. One officer attempted to use his taser to apprehend Mr. Oloa but was unsuccessful. While running through the parking lot, Mr. Oloa looked at the officer running behind him, grabbed his firearm, extended his arm behind his back, and fired at the officer. The officers took cover after the shot. Mr. Oloa turned around and again pointed the firearm in the direction of the officers before continuing to run

2

through the parking lot toward an apartment building where the officers lost sight of him. When officers apprehended Mr. Oloa later that night, he had in his possession a semi-automatic pistol, with one round of ammunition jammed in the chamber.

### B.  *Procedural History*

Mr. Oloa was charged with assaulting a federal officer, in violation of 18 U.S.C. § 111(a) and (b), and unlawfully possessing a firearm, in violation of 18 U.S.C. § 922(g)(1). Mr. Oloa pleaded guilty to both charges.

The United States Probation Office prepared a presentence investigation report ("PSR") in preparation for sentencing. Describing the offense conduct, the PSR reported the video surveillance footage demonstrated that while the officers were chasing Mr. Oloa, he "brandished a firearm . . . and fired one round toward the officers." ROA Vol. II at 30. After the first shot, the PSR reported Mr. Oloa "attempt[ed] to clear the weapon by using both his hands to pull the slide of the firearm," then "pointed the firearm towards officers again before he realized it was still jammed and attempted to clear the chamber again before he pointed it at the officers as he fled into the apartment complex." *Id.*

Based on this reported conduct, the probation officer applied a cross-reference for attempted murder when calculating the offense level for Mr. Oloa's firearm possession conviction. The probation officer reasoned that Mr. Oloa "discharged one round towards officers and attempted to fire additional rounds; however, the firearm jammed, and the defendant was unable to clear the weapon as he fled." *Id.* at 32. After calculating Mr. Oloa's total offense level of 30 and criminal history category of

V, the PSR reported an advisory Guidelines range of 151 to 188 months'
imprisonment.

Mr. Oloa objected to several sections of the PSR. As relevant to this appeal,
Mr. Oloa objected "to the extent that it alleges Mr. Oloa fired directly at officers." *Id.*
at 49. Instead, Mr. Oloa asserted that "[t]he one round that Mr. Oloa shot was aimed
towards the ground for the purpose of impeding their pursuit of him." *Id.* Based on
this objection, Mr. Oloa also objected to the attempted murder cross-reference.
Mr. Oloa further explained his basis for this objection in his sentencing memorandum
and motion for downward variance. Mr. Oloa explained that "although he did fire one
shot to slow down the police in their pursuit of him in this matter, he had no intent to
harm the officers and did not put them at risk of serious bodily injury." ROA Vol. I at
32. Without such an intent to commit murder, Mr. Oloa argued the attempted murder
cross-reference was erroneous. Mr. Oloa asserted his lack of intent was supported by
"the surveillance video at the scene, which shows that Mr. Oloa wasn't even looking
in the direction of the officers when he fired." *Id.* at 33. The Government disagreed,
arguing the attempted murder cross-reference was appropriate where a preponderance
of the evidence, i.e., the video evidence, supported the conclusion that Mr. Oloa
intended to kill the officers so he could escape their pursuit.

At the sentencing hearing, the district court overruled Mr. Oloa's objection,
explaining:

> It is clear to the [c]ourt from the evidence that . . . [the] firearm was not
> fired into the ground as simply as the defendant would have us believe,
> that it was simply some type of warning shot or some—if there can be an

4

> innocuous firing of a gun. . . —simply a way to deter or interfere with the officers chasing him.
>
> The firearm was not fired forward. It wasn't fired in the air. It wasn't fired straight down.

ROA Vol. III at 38. The district court explained that in its view of the video, Mr. Oloa "throws his arm back and points the firearm behind him . . . . in the direction of the officers." *Id.* The district court also noted this finding was supported "by the fact that there appears to be a second attempted shot as evidenced by not only the video wherein the firearm was pointed at the officers, but [also] the firearm [which, when] recovered . . . demonstrated that it [had] malfunctioned." *Id.* at 38–39. The district court disagreed with Mr. Oloa's argument that the preponderance of the evidence did not support a finding of intent because the angle of the firearm is not clear, stating that "[t]o slice that any thinner would be to suggest" that an intent to kill could not be found "if you were a poor marksman." *Id.* at 39. The district court noted that "no one would know—short of some type of laser—where that firearm was actually pointed, but it does appear from the video and the evidence that that gun was fired at the officers." *Id.*

After overruling Mr. Oloa's objections, the district court adopted the PSR "as the findings of the [c]ourt for sentencing purposes," including the offense level calculations and the advisory Guidelines range of 151 to 188 months' imprisonment. *Id.* at 41. Based on this calculation and the 18 U.S.C. § 3553 factors, the district court sentenced Mr. Oloa to 188 months' imprisonment as to the assault conviction and

120 months' as to the possession conviction, to be served concurrently. Mr. Oloa timely appealed his sentence.

## II.   DISCUSSION

On appeal, Mr. Oloa challenges the district court's application of the attempted murder cross-reference when calculating his Guidelines range. The gravamen of Mr. Oloa's challenge is his contention that the district court clearly erred by finding that he intended to kill the pursuing officers when he fired the gun, rather than finding that he fired as a means to escape without intending to hit the officers. Before reaching the merits of this challenge, we first explain the Guidelines cross-reference provision and address the parties' dispute as to the correct standard of review.

### A.   *Legal Background*

When sentencing a defendant who "used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense," USSG §2K2.1 requires district courts to cross-reference "to USSG §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than" the offense level calculated pursuant to §2K2.1 and did not result in death. *See* United States Sentencing Commission, *Guidelines Manual* §2K2.1(c)(1)(A) (Nov. 2021). In turn, USSG §2X1.1 requires district courts to cross-reference to another offense Guideline section "[w]hen an attempt, solicitation, or conspiracy is expressly covered by" that section. USSG §2X1.1(c). For purposes of this cross-reference, "another offense" means "any federal, state, or local offense, other than the explosive or firearms

6

possession or trafficking offense, regardless of whether a criminal charge was brought, or a conviction obtained." USSG §2K2.1, comment. (n.14(C)) . The "relevant conduct must be proven by only a preponderance of the evidence." *United States v. Craig*, 808 F.3d 1249, 1255 (10th Cir. 2015).

Accordingly, the questions before the district court, in deciding what cross-reference to apply (if any), were:

(1) Did Mr. Oloa's offense of conviction involve a firearm or ammunition?

(2) If so, did he use or possess this firearm or ammunition in connection with the commission or attempted commission of another federal, state, or local offense, regardless of whether he was charged or convicted of such other offense?

(3) If the answer to the above two questions is yes, whether the attempted commission of the other offense is expressly covered by another offense Guideline section?

The answer to the first question was "yes." Mr. Oloa's offense of conviction was possession of a firearm after being convicted of a felony, under 18 U.S.C. § 922(g)(1). The district court also answered the second and third questions in the affirmative, concluding Mr. Oloa used the firearm in connection with the commission of attempted murder and that attempted murder is expressly covered by USSG §2A2.1 (Assault with Intent to Commit Murder; Attempted Murder). Mr. Oloa disputes the second conclusion, arguing the district court clearly erred in finding the video established by a preponderance of the evidence his intent to murder the officers.

We now turn to the standard of review applicable to the district court's finding regarding Mr. Oloa's intent, an issue the parties dispute, before turning to the merits of Mr. Oloa's challenge.

## B.    Standard of Review

We review "legal questions regarding the application of the Sentencing Guidelines de novo, and a district court's factual findings are reviewed only for clear error, giving due deference to the district court's application of the Guidelines to the facts." *United States v. Finnesy*, 953 F.3d 675, 688 (10th Cir. 2020) (internal quotation marks omitted). A factual finding is clearly erroneous "only if [it] is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Craig*, 808 F.3d at 1255 (alteration in original) (quotation marks omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse it even if we may have weighed the evidence differently. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). In other words, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574. "The party challenging the sentence 'bears the initial burden of showing that the district court' erred." *United States v. Sanchez–Leon*, 764 F.3d 1248, 1262 (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

The parties recite the same standard we recite, but they disagree as to how it should apply to the district court's factual findings of Mr. Oloa's intent based on

8

video evidence. Mr. Oloa argues "[t]he clear-error standard calls for less deference in this case than in others because the district court's ruling was primarily based on videos that this [c]ourt can review for itself, rather than on live witness testimony that cannot be recreated on appeal." Appellant's Br. at 9. The Government, on the other hand, contends we "must uphold the district court's finding unless it is 'blatantly contradicted' by the video evidence." Appellee's Br. at 11 (quoting *United States v. Roberts*, 717 F. App'x 810, 812 (10th Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007))).

Neither party is correct. In the context of suppression hearings, we have reiterated that we "defer[] to the district court's finding of facts and review[] them solely for clear error, even when . . . there is video tape of the [event]." *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010); *see id.* ("The increasing availability of videotapes of traffic stops due to cameras mounted on patrol cars does not deprive district courts of their expertise as finders of fact, or alter our precedent to the effect that appellate courts owe deference to the factual findings of district courts." (quoting *United States v. Santos*, 403 F.3d 1120, 1128 (10th Cir. 2005))); *see also United States v. Dickerson*, 678 F. App'x 706, 718 (10th Cir. 2017) (unpublished) (reviewing the district court's finding of bodily injury based on a video recording for clear error, concluding "[a]lthough we have no evidence that the taser caused . . . lasting pain, it would not be clearly erroneous for the district court to infer that the injury . . . was painful based on [the] reaction to the taser in the video recording."). When reviewing the district court's finding of intent based on the video

9

evidence for the purposes of applying the attempted murder cross-reference here, we review for clear error and will reverse "only if [it] is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Craig*, 808 F.3d at 1255 (alteration in original) (quotation marks omitted); *see also United States v. Piper*, 839 F.3d 1261, 1270 (10th Cir. 2016) (reviewing a district court's factual findings of intent based on video evidence for clear error and affirming the denial because we "lack[ed] a definite and firm conviction that the district court erred in finding [the defendant] intended the video to be viewed by and construed as a threat to the cooperating witness." (internal quotation marks omitted)).

Mr. Oloa relies on two Supreme Court cases to argue we should give less deference to the district court's factual findings in this case based on the ease of independently reviewing the evidence. Appellant's Br. at 9 (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499–50 (1984); *Easley v. Cromartie*, 532 U.S. 234, 243 (2001)). However, neither case persuades us to arrive at that conclusion here. In *Bose Corp.*, the Supreme Court held that "the clearly-erroneous standard of Rule 52(a) of the Federal Rules of Civil Procedure does not prescribe" the obligation to make an independent examination of the whole record in cases raising First Amendment issues. 466 U.S. at 499, 514. The Court explained that, although "[t]he same 'clearly erroneous' standard applies to findings based on documentary evidence as to those based entirely on oral testimony," the "presumption of correctness" applies with less force in cases raising First

10

Amendment issues because "the rule of independent review assigns to judges a constitutional responsibility that cannot be delegated to the trier of fact, whether the factfinding function be performed in the particular case by a jury or by a trial judge." *Id.* at 500–01. In *Easley*, the Supreme Court reviewed a three-judge district court's determination of racially motivated redistricting "only for 'clear error.'" 532 U.S. at 242; *id.* at 237. The Court noted that "[w]here an intermediate court reviews, and affirms, a trial court's factual findings, [it] will not 'lightly overturn' the concurrent findings of the two lower courts." *Id.* However, where there was no intermediate court in that case, and "the key evidence consisted primarily of documents and expert testimony," the Court concluded "an extensive review of the District Court's findings, for clear error, [wa]s warranted." *Id.* at 243.

Neither case demonstrates that less deference to the district court's factual findings is warranted in this case. The independent review in *Bose* was based on "a constitutional responsibility" in cases raising First Amendment issues. 466 U.S. at 499. And, in *Easley*, the Court concluded the independent review was warranted because there had been no intermediary review of the findings. 532 U.S. at 243. Absent such circumstances creating an independent obligation to review the entire record, we defer to the district court's factual findings under the clearly erroneous standard "even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Anderson*, 470 U.S. at 574.

11

The Government maintains that in applying this standard, we "must uphold the district court's finding unless it is 'blatantly contradicted' by the video evidence." Appellee's Br. at 11 (quoting *Roberts*, 717 F. App'x at 812 (citing *Scott*, 550 U.S. at 380–81)). But the Supreme Court applied the "blatant[] contradict[ion]" standard in the context of a motion for summary judgment. *Scott*, 550 U.S. at 380. When describing whether the parties had presented a genuine issue of material fact, the Court stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* This standard is not applicable when reviewing the procedural reasonableness of a criminal sentence. If video evidence blatantly contradicted a district court's factual findings in this context, it may very well also demonstrate the court clearly erred if the finding was otherwise "without factual support." *Craig*, 808 F.3d at 1255. However, we are not required to conclude evidence blatantly contradicts the district court's findings to conclude that finding is clearly erroneous. *See United States v. Mejia-Canales*, 467 F.3d 1280, 1284 (10th Cir. 2006) (finding clear error when the district court's factual finding was "simply without factual support in the record" without requiring the photographs to blatantly contradict the finding) (internal quotation marks omitted).

In summary, the district court's reliance on video evidence does not change our standard of review for its factual finding of intent. Instead, we "defer[] to the district court's finding of facts and review[] them solely for clear error, even when

12

. . . there is video tape of the [event]." *Simpson*, 609 F.3d at 1146. In other words, we review the district court's factual findings based on the video and uphold those findings unless they are unsupported by the record or we are left with the definite conviction that an error has been made. *Craig*, 808 F.3d at 1255.

### C.    *Analysis*

With the above standard of review in mind, we now address Mr. Oloa's challenge to the district court's application of the attempted murder cross-reference when calculating his Guidelines range. The Guideline pertaining to attempted murder applies when the evidence demonstrates "a specific intent to kill the victim . . . . [A]cting with malice by committing a reckless and wanton act without also intending to kill the victim is not sufficient for conviction." *United States v. Currie*, 911 F.3d 1047, 1054 (10th Cir. 2018) (citing *United States v. Perez*, 43 F.3d 1131, 1138 (7th Cir. 1994)). We have recognized that "[i]ntent, of course, is seldom established by direct evidence, and resort must generally be made to circumstantial evidence." *United States v. Davidson*, 597 F.2d 230, 232 (10th Cir. 1979).

At the sentencing hearing, the district court relied on the following to find Mr. Oloa shot at the officers with the intent to kill:

- Mr. Oloa did not fire forward, into the air, or straight down.

- Mr. Oloa "thr[ew] his arm back" in the direction of the officers and fired.

- Mr. Oloa tried to shoot at the officers a second time, again pointing the firearm at the officers.

- When the firearm was recovered, it had malfunctioned, demonstrating the next round "was interfering with the cycling of the firearm, making it incapable of firing a second shot."

ROA Vol. III at 38–39.

Mr. Oloa argues the finding that he intended to kill the officers is clearly erroneous for three reasons. First, he argues the video evidence does not demonstrate an intent to kill by a preponderance of the evidence because the angle of where he was pointing the gun is unclear. Second, Mr. Oloa argues the firearm malfunction does not support a finding that he tried to fire at the officers a second time because the type of semi-automatic firearm Mr. Oloa used loads another bullet automatically after one is shot. Finally, Mr. Oloa argues the second shot cannot demonstrate an intent to kill because the video does not demonstrate where the officers were positioned. Based on these arguments, Mr. Oloa asserts the district court clearly erred in "credit[ing] the [G]overnment's theory" of the surveillance video over his account. Appellant's Br. at 21. We disagree.

Even without knowing the exact angle of Mr. Oloa's shot, the district court's finding has support in the record.[2] Specifically, the videos support the district court's

---

[2] We reject Mr. Oloa's argument that intent to kill requires a defendant to precisely aim at a particular individual and therefore the district court's ruling cannot "be affirmed on the theory that Mr. Oloa positioned his gun in the officers' general direction." Reply Br. at 16; *see also id.* at 9–16; Appellant's Br. at 11–12. We have observed that an intent to kill can be "based solely on the fact that the defendant shot in the victim's direction such that the bullet could have struck him." *United States v. Alexander*, No. 20-6154, 2022 WL 2763689, at *7 (10th Cir. July 15, 2022) (unpublished) (quoting *United States v. Caston*, 851 F. App'x 557, 564 (6th Cir. 2021)).

finding that Mr. Oloa shot at the pursuing officer with the intent to kill. The videos show Mr. Oloa running away from the officers, while looking back to see where the officers are in relation to him—with one officer directly behind him and the other behind him and to his right. After looking at the officer directly behind him, Mr. Oloa continues to run forward but extends his arm backward toward the officer and shoots. The officers respond by taking cover. In one of the videos, Mr. Oloa can then be seen putting two hands on the gun and manipulating it in a manner consistent with trying to clear the jam. Mr. Oloa then angles the gun behind him and to his right, in the direction of where the second officer had been. Neither the angle of the gun, nor the fact that the officers took cover after the first shot, undermine the district court's finding that by shooting a loaded gun at the pursuing officers, Mr. Oloa intended to kill them.

Mr. Oloa compares the district court's factual finding of intent based on the video evidence in this case to two cases where we concluded photograph evidence did not support certain factual findings for the application of the Guidelines. Neither comparison is persuasive. In *United States v. Mejia-Canales*, we concluded photographic evidence relied upon by the district court "len[t] no support" to its factual finding of bodily injury. 467 F.3d at 1284. In that case, we reviewed the district court's sentencing enhancement for bodily injury "inflicted during a scuffle" between an inmate and a police officer at a county jail. *Id.* at 1281. The district court added two levels to the offense level "because the victim sustained bodily injury." *Id.* The only evidence before the district court to support the officer's injuries of "a small

laceration on the inside of his mouth and a red mark on his forehead," were three photographs "of particularly poor quality." *Id.* We concluded these three photographs were insufficient to prove "bodily injury" to support the enhancement under the Guidelines. *Id.* at 1282. Because the poor-quality images did not demonstrate an injury that was painful and obvious, lasting or "of a type for which medical attention ordinarily would be sought," *id.*, we concluded the district court's finding of bodily injury was "without factual support in the record" and constituted clear error, *id.* at 1284.

Mr. Oloa also relies on *United States v. Aragon*, 922 F.3d 1102 (10th Cir. 2019). In that case, we reviewed for clear error a district court's "determination of the quantity of drugs for which the defendant [wa]s held accountable under the Guidelines." 922 F.3d at 1110 (quotation marks omitted). There, the district court relied on two pieces of evidence to make this finding: (1) an "inventory of the car's contents listing the packaged weights of the suspected drugs," and (2) "photographs of the suspected drugs in their packaging." *Id.* at 1111. Based on the photographs alone, the district court found "that the packaging weighed half a gram." *Id.* We concluded this finding was clearly erroneous because "the photographs in th[e] case provide[d] a poor basis for determining how much of the gross weights . . . [wa]s attributable to the packaging," noting "there was no scientific basis for estimating quantity from appearance." *Id.* (quotation marks omitted). Because the photographs did not provide "even a minimum indicia of reliability" as to the weight of the unpackaged suspected drugs and there was no other evidence to support the net

weight, we concluded the district court's sentencing decision was not supported by the record. *Id.* at 1112–13 (internal quotation marks omitted).

These cases are inapposite. Here, the video evidence provides a sufficient basis to find Mr. Oloa intended to kill the officers when shooting at them in the casino parking lot. Mr. Oloa all but concedes that the district court's interpretation of the video evidence is supported by arguing that "the footage provides no reason to credit the [G]overnment's theory over Mr. Oloa's account." Appellant's Br. at 21. To be sure, the district court's interpretation of the evidence is not the only permissible one. But the possibility of a different interpretation of Mr. Oloa's intent based on the video does not transform the district court's finding into clear error. *Anderson*, 470 U.S. at 574. If the "court's account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse even if we may have weighed the evidence differently. *Id.* In other words, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* Because the district court's interpretation of Mr. Oloa's intent based on his actions in the video is supported by the record, it did not clearly err in making such a finding.

## III.   CONCLUSION

We AFFIRM Mr. Oloa's sentence.

Entered for the Court

Carolyn B. McHugh
Circuit Judge